UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Karen W., | § § § § | |
| *Plaintiff,* | § § | Civil Action No. 4:23-cv-04330 |
| v. | § § | |
| Martin O'Malley,[1] Commissioner of Social Security, | § § § | |
| *Defendant.* | § § § | |

## MEMORANDUM AND RECOMMENDATION

This appeal from an administrative ruling denying social security benefits was referred to the undersigned judge. Dkt. 7, 13. After carefully considering the parties' briefs, Dkt. 8, 11, 12, the record, Dkt. 15, and the applicable law, it is recommended that Plaintiff Karen W.'s motion for remand (Dkt. 8) be denied, and that the decision of the Commissioner of Social Security be affirmed.

## Background

Plaintiff filed an application for disability insurance benefits on July 12, 2021. R.10, 325-26. In her application, Plaintiff asserted that she became

---

[1] The Court is aware that O'Malley resigned, and Leland Dudek is the new Acting Commissioner of Social Security. But no request to substitute Dudek for O'Malley has been made.

unable to work on March 8, 2020, due to a disabling condition. R.325. As alleged impairments, Plaintiff listed diabetes, gastro-esophageal reflux disease ("GERD"), nerve pain, osteoarthritis, post-traumatic stress disorder ("PTSD"), spinal stenosis, and headaches. R.175.

After her application was denied initially, R.190, 202, 215, and upon reconsideration, R.191, 223, 233, Plaintiff sought and received a hearing before an administrative law judge ("ALJ"), R.281, 153-74. Plaintiff and a vocational expert ("VE"), Teresa Rogers, testified at the hearing. *See* R.157-70 (Plaintiff's testimony); R.170-74 (VE's testimony). After the hearing, the ALJ issued an opinion concluding that Plaintiff did not qualify as disabled. *See* R.11, 20-21.

In considering the medical record, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; diabetes mellitus; GERD; osteoarthritis of the hips; PTSD; anxiety; and spinal stenosis. R.12. The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1. R.13. This finding was based on the ALJ's analysis of Plaintiff's physical and mental impairments. R.13-15.

Given her limitations, the ALJ formulated Plaintiff's residual functional capacity ("RFC"), finding that she can

perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant can stand and/or walk 6 hours in an 8-hour workday; she can sit 6 hours in an 8-hour workday, she can lift and/or carry 10 pounds frequently and 20 pounds occasionally; she can never climb ropes, ladders, or scaffolds; she can frequently climb ramps and stairs; she can occasionally stoop, crouch, kneel, and crawl; she can frequently perform reaching with the bilateral upper extremities; she can perform detailed but not complex instructions and tasks; she can frequently interact with coworkers and the public; and she can maintain adequate concentration, persistence, and pace to remain on-task for all work except assembly line and production-paced work tasks.

R.15. The ALJ created the RFC after evaluating Plaintiff's asserted symptoms in light of the objective medical evidence and other evidence. R.15-18.

The ALJ determined that, with this RFC, Plaintiff can perform her past relevant work as a sales clerk. R.19. The ALJ also found other jobs existing in significant numbers in the national economy that Plaintiff can perform, namely positions as a marker, a garment sorter, and an office helper. R.19-20.

Plaintiff unsuccessfully appealed the ALJ's decision to the Social Security Administration Appeals Council, which rendered the decision ripe for this Court's review. *See* R.1-3; 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## Legal standard

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (quotation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotation omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I.    Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted).    Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five. *See id.* at 776 n.2 (quoting § 416.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing § 416.1520(a)(4)).    The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017).    At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

II.   **The ALJ properly considered the opinions of Drs. Patty Rowley**
      **and Larry Wilson in formulating the RFC.**

Plaintiff challenges the ALJ's lack of explanation for rejecting opinions

of two state agency medical examiners, Drs. Patty Rowley and Larry Wilson.

*See* Dkt. 8 at 2-5; Dkt. 12 at 1-3.   Plaintiff notes that the ALJ found both

opinions "partly persuasive" but rejected those doctors' restrictions on

Plaintiff's standing or walking to two hours in an eight-hour workday. *See* Dkt.

8 at 3 (citing R.18, 184, 196).   Plaintiff argues that the ALJ did not explain the

rejection of these functional limitations as inconsistent with or unsupported by

the medical evidence.  *See id.* at 4 (citing R.18).   She asserts that the ALJ's

only hypothetical question to the VE assumed a six-hour standing or walking

ability, not the two-hour limitation mentioned by Drs. Rowley and Wilson.  *See*

*id.* (citing R.171).   She further contends that the ALJ formed the RFC for light

work, which includes the ability to stand or walk for six hours in an eight-hour

workday, with "zero explanation" for rejecting Rowley's and Wilson's two-hour

standing limitation.  *See id.* at 4 (citing R.15, 171; SSR 83-10, 1983 WL 31251,

at *5-6 (defining light work)).

The Commissioner responds that the ALJ properly considered Drs.

Rowley's and Wilson's medical findings and found them partly persuasive

because they were only partially supported by the medical evidence.  *See* Dkt.

11 at 2 (citing R.18).   The Commissioner argues that the ALJ identified and

6

considered numerous medical opinions and other evidence that conflict with Drs. Rowley's and Wilson's two-hour standing limitation. *See id.* at 2-4.

The RFC is a predicate to steps four and five that determines "the most the claimant can still do despite his [or her] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Kneeland*, 850 F.3d at 754 (quoting *Perez*, 415 F.3d at 461-62). "The ALJ is responsible for determining an applicant's [RFC]." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546); *see also* 20 C.F.R. § 404.1527(d)(2). To do so, the ALJ examines "all the relevant evidence in [an applicant's] case record." 20 C.F.R. § 404.1545(a)(1); *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). "The ALJ is not required to incorporate limitations in the RFC that [he] did not find to be supported by the record." *Lyles v. Kijakazi*, 2023 WL 6279903, at *7 (S.D. Tex. Sept. 26, 2023) (quotation omitted).

When determining the RFC, the ALJ must evaluate the persuasiveness of "all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b). "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (quoting 20 C.F.R. § 404.1520c(c)). Among those factors, the most important are

supportability and consistency. *Id.* (citing § 404.1520c(b)(2)). "[T]he ALJ is required to explain how he considered the supportability and consistency factors ...." *Id.* (quotation omitted).

Here, the ALJ formulated the RFC after determining the persuasiveness of the medical opinions, including those of Drs. Rowley and Wilson. Drs. Rowley and Wilson had opined that Plaintiff could "perform work at the light exertional level with postural limitations." R.18, 184-86, 196-98. Both doctors recommended an exertional limitation of "stand and/or walk (with normal breaks)" for a total of two hours. *See* R.184, 196 (RFC recommendations). Although the ALJ did not explicitly cite those physicians' two-hour standing/walking limitation, the ALJ explicitly found their opinions only partly persuasive and only partly supported upon incorporating his analysis of Plaintiff's medical records. R.18.

For instance, the ALJ noted Plaintiff's post-operative follow-up in July 2021, in which Dr. Anthony Capili recorded "no weakness" and "no persistent numbness or swelling" after Plaintiff's back surgery. *See* R.16, 1041. At that visit, Plaintiff's extremities and neurologic system were normal, and Dr. Capili recorded that Plaintiff was doing "everyday household work as of this time." *See id.* Similarly, the ALJ considered Plaintiff's October 2021 visit with Dr. Adam Carlton, who found maximum strength in Plaintiff's right and left upper and lower extremities. *See* R.16, 1516.

The ALJ also highlighted a December 2021 exam with Nurse Practitioner Courtney Babcock, where Plaintiff denied any gait abnormality and showed full strength in her extremities and full range of motion. R.16, 1129-30. This was also true the following month, during Plaintiff's January 2022 consultative physical exam by Dr. Daryl Daniel. *See* R.16, 1106-08. As noted by the ALJ, Dr. Daniel found no obvious distress; no evidence of back spasms; no joint instability or swelling; adequate sensory examination in upper extremities but decreased in lower extremities; full upper extremity strength; and near-full lower extremity strength (4/5). *See* R.16-17, 1106-08. While noting Dr. Daniel's observation that Plaintiff "cannot walk on toes and heels," could not squat, had a "slow" gait, and had "problems standing from [a] sitting position." R.16-17 (citing R.1108), the ALJ also noted that Plaintiff's lumbar x-ray was generally "normal," with only "mild multilevel lumbar spondylosis ...." R.17.

The ALJ also detailed evidence undermining Plaintiff's testimony about needing a walker and having difficulty standing, sitting, and walking. *See* R.166-67 (Plaintiff's testimony); R.18 (finding Plaintiff's symptoms and self-described limitations "inconsistent with the information given to her health care providers in the medical record"). As the ALJ explained, Dr. Daniel's January 2022 report noted Plaintiff's walker use, but did not specify restrictions or limitations for Plaintiff related to walker use. *See* R.17; 1108.

Moreover, Plaintiff's subsequent medical exams, in April 2022 and May 2022, did not indicate that Plaintiff was using a walker. *See* R.17, 1122-28. Instead, both exams found Plaintiff generally normal, with full musculoskeletal range of motion. *See* R.1122-28 (Katie McCray, P.A.).

The ALJ's discussion of medical evidence contravening Drs. Rowley's and Wilson's opinion that Plaintiff cannot stand or walk more than two hours each day adequately substantiates the ALJ's reasons for rejecting such a restriction in the RFC. It is the ALJ's job to resolve conflicting evidence. *Perez*, 415 F.3d at 461. The ALJ's RFC formulation, which deemed Plaintiff' able to stand or walk for six hours in an eight-hour workday, was based on substantial evidence and proper consideration of the medical evidence. *See Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (affirming ALJ's decision even though it rejected a doctor's testimony and declined to adopt a state agency report verbatim).

Moreover, even if the ALJ erred by not explicitly *mentioning* the two-hour standing/sitting limitation, the remainder of the ALJ's opinion reflects that the ALJ would still have declined to include that limitation. As shown above, the ALJ emphasized numerous records indicating that Plaintiff did not need to use a walker, and that her issues with standing, sitting, and walking are not as severe as she maintained. That is also reflected in the ALJ's inclusion of a six- (rather than two-) hour standing and walking limitation in the RFC. *See* R.15. There is no indication that the ALJ would have reached a

different conclusion had the ALJ expanded upon his explanation.  As a result,

any failure to include a more fulsome explanation would be harmless.  *Cf.*

*Miller v. Kijakazi*, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (per curiam)

(the ALJ erroneously failed to explain fully her rejection of medical opinions

with more limiting restrictions, but the error was harmless because the

claimant failed to show that the ALJ would have adopted those restrictions

upon further explanation).

Because the ALJ committed no reversible error when formulating the

physical limitations reflected in the RFC, Plaintiff also cannot show that the

ALJ erred in his hypothetical questions to the VE.  To the contrary, the

hypothetical questions included the same limitations that the ALJ found, and

that substantial record evidence supports.  R.15, 171.  The ALJ's findings

regarding Plaintiff's physical limitations, as incorporated in the RFC, should

be affirmed.

### III. The ALJ properly considered the opinions of mental consultative examiner Dr. Gayle Pitcher.

Plaintiff argues that the ALJ failed to request further explanation from

Dr. Gayle Pitcher, a state agency consultative psychologist, after finding her

opinion "vague" and "not expressed in policy-compliant concepts."  *See* Dkt. 8

at 2, 6-7 (citing R.18).  Regulations required the ALJ to seek further

explanation, Plaintiff contends, because Dr. Pitcher's opinion about Plaintiff's

11

mental limitations may indicate work-preclusive conditions.  Dkt. 8 at 6; Dkt. 12 at 3 (both citing 20 C.F.R. § 404.1519p(b)).  Plaintiff maintains that the Commissioner's "post hoc rationalization" cannot support the ALJ's explanation of his consideration of Dr. Pitcher's opinion.  *See* Dkt. 12 at 2-3.

The Commissioner responds that the ALJ properly considered Dr. Pitcher's opinion by explaining why he found it partly persuasive, and by accounting for Plaintiff's severe mental impairments in the RFC assessment. Dkt. 11 at 5-6 (citing R.15, 17-18).  The Commissioner further contends that Plaintiff's reliance on regulations about "inadequate or incomplete" consultative examiner reports is unavailing, because Dr. Pitcher's report was neither, and the ALJ had sufficient evidence for formulating the RFC.  *See* Dkt. 11 at 5-6 (citing Dkt. 8 at 6-7).  Finally, the Commissioner contends that Plaintiff has failed to meet her burden of showing prejudice from failure to develop the record.  Dkt. 11 at 6-7.

"The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam).  The Fifth Circuit will reverse an ALJ's decision as not supported by substantial evidence if the claimant shows (1) the ALJ failed to adequately develop the record, and (2) the claimant was prejudiced by this failure.  *See id.*

"[W]hen a consultative examiner's report is inadequate or incomplete, [20 C.F.R. § 404.1519p(b)] requires that the ALJ contact the medical source who performed the consultative examination, give an explanation of the evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." *Petersen v. Kijakazi*, 2021 WL 4243509, at *3 (S.D. Tex. Sept. 17, 2021) (quotation omitted). A consultative examiner's report is not rendered incomplete simply because it fails to state what a claimant can still do despite his limitations. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 122 (6th Cir. 2016) (citing 20 C.F.R. §§ 404.1519n(c)(6); 416.919n(c)(6)). An ALJ is not required to contact a consultative examiner whose opinion he finds vague; instead, the ALJ may discount that opinion due to vagueness. *See Ingram v. Berryhill,* 2018 WL 5634345, at *12 (N.D. Ohio Aug. 17, 2018) (citing *Hamilton v. Comm'r of Soc. Sec.*, 2016 WL 4771238, at *5 (W.D. Mich. Sept. 14, 2016); *Garcia v. Comm'r of Soc. Sec.*, 2018 WL 838371, at *12 (N.D. Ohio Feb. 12, 2018)), *adopted by* 2019 WL 416331 (N.D. Ohio Feb. 1, 2019).

As the Commissioner argues, Dr. Pitcher's opinion is neither inadequate nor incomplete such that the ALJ needed to elicit further information. In *Ingram*, a consultative physician examined the claimant and found his abdominal pain "mildly" limiting in activities requiring prolonged standing and walking. *See* 2018 WL 5634345, at *2-3, 11. The ALJ found this opinion

"vague" and did not contact the doctor for clarification. *See id.* at \*12. The court held that the claimant had not shown the doctor's report was "inadequate or incomplete," when the report "contained a history of … impairments and subjective complaints, the physical examination findings, a completed range of motion chart, and diagnoses." *See id.* The court further noted that the ALJ's characterization of the opinion as "vague" did not render it incomplete, concluding instead that the ALJ had no duty to request clarification from the consultative examiner. *See id.*

The *Ingram* court also found substantial evidence supporting the ALJ's vagueness determination. *See id.* The consultative examiner did not explain what amounted to "mild" limitations and did not quantify how much time the claimant could stand or walk. *See id.* These omissions allowed the ALJ to discount the consultative examiner's opinion for vagueness. *See id.*; *see also Garcia,* 2018 WL 838371, \*12 (collecting cases that found medical opinions to be vague).

Similarly, here, Dr. Pitcher's opinion is not inadequate or incomplete. The opinion includes Plaintiff's history of impairments and subjective complaints, detailed notes of her mental status examination, and her diagnoses. *Compare* R.1114-19 (Dr. Pitcher's report), *with Ingram,* 2018 WL 5634345, at \*12 (describing an adequate consultative examiner's report). The ALJ had no duty to contact Dr. Pitcher to clarify or supplement her report.

Like the *Ingram* case, the ALJ also had an adequate basis to reject Dr. Pitcher's opinion as vague.[2] Overall, the ALJ found Dr. Pitcher's opinion partly persuasive, because her finding of some impairment to Plaintiff's concentration, persistence and pace, and Plaintiff's interaction with others was consistent with the objective medical evidence. *See* R.18. As the Commissioner notes, *see* Dkt. 11 at 6, the ALJ considered Dr. Pitcher's opinions that Plaintiff was cooperative, logical, and goal-oriented, with no evidence of abnormal thoughts or perceptions, and that her "[c]oncentration and attention appeared adequate." R.17-18 (citing R.1114-19). Furthermore, the ALJ noted that the record contains "no actual treatment by a mental health professional for any psychological problem," and numerous medical opinions (from May 2020 to May 2022) found normal mood and behavior. R.17, 445, 1043-45, 1122-30.

In contrast to these findings, under "Functional Capacity," Dr. Pitcher opined that Plaintiff is (1) "unlikely to have the ability to sustain concentration and persist in work-related activity at a reasonable pace due to anxiety and depression"; and (2) "unlikely [to] maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or cope with normal pressures in a competitive work setting." R.1119. The

---

[2] Plaintiff does not argue the ALJ incorrectly characterized Dr. Pitcher's opinion as vague. Rather, Plaintiff's sole assertion concerns the ALJ's failure to request further clarification from Dr. Pitcher. *See* Dkt. 8 at 6-7; Dkt. 12 at 3; *Ingram*, 2018 WL 5634345, at *12 n.14.

15

ALJ found this opinion "vague in the use of the word 'unlikely' and not expressed in policy-compliant statements." R.18. As in *Ingram*, Dr. Pitcher's opinion is vague because she did not explain what "unlikely" meant in this context or quantify the amount of time Plaintiff could concentrate or interact with others. R.1119; *cf.* 2018 WL 5634345, at *12 (agreeing with the ALJ's vagueness determination of a medical opinion finding "mild" limitations). This is doubly problematic because Dr. Pitcher's own observations about Plaintiff, including her adequate concentration and attention and her ability to act cooperatively, logically, and in a goal-oriented fashion, appear to conflict with Dr. Pitcher's vague conclusions. Substantial evidence therefore supports the ALJ's decision to discount Dr. Pitcher's opinion as vague. *See Ingram*, 2018 WL 5634345, at *12. The ALJ's decision to deny benefits should be affirmed.

### Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff Karen W.'s motion for remand (Dkt. 8) be **DENIED** and that the decision of the Commissioner of Social Security be **AFFIRMED.**

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for**

**plain error.** *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on February 24, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

17